**CASE NO. 25-0502**

**IN THE**

# United States Court of Appeals

**FOR THE SIXTH CIRCUIT**

DAVID ELLIOT,
*Plaintiff-Respondent*

v.

HUMANA, INC.,
*Defendant-Petitioner*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
NO. 3:22-CV-00329, HON. JUDGE JENNINGS

## RESPONDENT'S ANSWER TO PETITION


James S. Wertheim
Michael Hartmere
Brittany Clark
The HQ Firm, P.C.
7533 S. Center View Ct. #4424
West Jordan, UT 84084
385-440-4121
Jim@thehqfirm.com
Michael.hartmere@thehqfirm.com
Brittany.clark@thehqfirm.com

*Counsel for Respondent*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-0502 Case Name: David Elliot v. Humana, Inc.

Name of counsel: James S. Wertheim

Pursuant to 6th Cir. R. 26.1, Respondent David Elliot
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

LawHQ, P.C.

CERTIFICATE OF SERVICE

I certify that on 5/5/25 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/James S. Wertheim

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

**I. STATEMENT OF JURISDICTION ..... 1**

**II. STATEMENT OF ISSUES ..... 1**

**III. STATEMENT OF THE CASE ..... 1**

**IV. SUMMARY OF THE ARGUMENT ..... 4**

**V. ARGUMENT ..... 6**

A. The procedural posture of this case shows that there is no "death-knell." ..... 6

i. Humana does not even acknowledge—let alone attempt to show—the "death-knell" requisites. ..... 6

ii. The procedural posture of the case strongly weighs against interlocutory review because multiple opportunities for review by the District Court still remain. ..... 7

B. Humana's "novel question" argument hinges on an obviously-false premise and thus Humana has no likelihood of success on the merits. ..... 9

C. Additional considerations, including the exceedingly broad scope of the prospective appeal, also weigh against interlocutory review. ..... 14

**VI. CONCLUSION ..... 14**

## TABLE OF AUTHORITIES

**Cases** | **Page(s)**

*Carmouche v. A1 Diabetes & Med. Supply, Inc.*,

586 F. Supp. 3d 795 (W.D. Tenn. 2022) ....................................................11

*Dealer Computer Servs., Inc. v. Dub Herring Ford*,

623 F.3d 348 (6th Cir. 2010) ....................................................................6

*Gibbs v. Stinson*,

No. 3:18CV676, 2021 WL 4812451 (E.D. Va. Oct. 14, 2021) ........................13

*Hodgin v. Parker Waichman LLP*,

No. 3:14-CV-733-DJH, 2015 WL 13022289 (W.D. Ky. Sept. 30, 2015)....9, 10

*In re Delta Air Lines*,

310 F.3d 953 (6th Cir. 2002) ............................................................ 6, 8, 14

*In re Lake City Indus. Prods., Inc.*,

No. 12-0108, 2013 WL 414652 (6th Cir. Jan. 9, 2013)....................................7

*In re SamMichaels, Inc.*,
No. 12-0110, 2013 WL 1760353 (6th Cir. Apr. 25, 2013)................................6

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,

302 F.R.D. 448 (N.D. Ohio 2014) ...................................................... 11, 12

*Krakauer v. Dish Network, L.L.C.*,

311 F.R.D. 384 (M.D.N.C. 2015) ..............................................................13

*Lavigne v. First Cmty. Bancshares, Inc.*,

No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018).......11

*Nichols v. Accretive Cap. LLC*,

No. 23-10473, 2023 WL 7222677 (E.D. Mich. Nov. 2, 2023) .......................10

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,

501 F.3d 592 (6th Cir. 2007) ..................................................................11

*Savidge v. Pharm-Save, Inc.*,

No. 3:17-cv-186-CHB, 2025 WL 964446 (W.D. Ky. Mar. 31, 2025) ............10

*Young v. Nationwide Mut. Ins. Co.*,

693 F.3d 532 (6th Cir. 2012) .....................................................9, 11

**<u>Statutes</u>**

28 U.S.C. § 1331 .....................................................................................1

47 C.F.R. 64.1200 ...................................................................................4

47 U.S.C. § 227 .......................................................................................4

Federal Rule of Appellate Procedure 5 ....................................................1

Federal Rule of Civil Procedure 23 .......................................................*passim*

**<u>Other Authorities</u>**

1 Newberg and Rubenstein on Class Actions § 3:6 (6th ed. Nov. 2024 update)...........................................................................................10

Wright and Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.)......................11

## STATEMENT REGARDING ORAL ARGUMENT

Respondent does not believe that oral argument is necessary to clarify the issues before this Court.

## I. STATEMENT OF JURISDICTION

This Court has jurisdiction to review Humana's petition for interlocutory appellate review of the District Court's Order granting class certification in this Telephone Consumer Protective Act case arising under 28 U.S.C. § 1331 pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5.

## II. STATEMENT OF ISSUES

1. Is the exceptional step of interlocutory review justified where the District Court analyzed and applied the proper framework of Federal Rule of Civil Procedure 23(b)(3) to find this TCPA case appropriate for class certification?

2. Does the District Court's detailed consideration and rigorous application of each element of Rule 23 constitute an abuse of its discretion?

3. Does the District Court's 28-page Order granting class certification warrant interlocutory review where there is no "death-knell," the procedural posture suggests further opportunities for review of the Order, the case presents no novel questions, and Humana is extremely unlikely to prevail on the merits of its claim?

## III. STATEMENT OF THE CASE

Defendant-Petitioner Humana, Inc.'s ("Humana") attempt to invoke Rule 23(f) for the rare interlocutory review of an Order granting class certification should be denied. There is no compelling reason to depart from this Court's long-standing practice of requiring a party to appeal class certification after final judgment. And while nominally a petition for interlocutory review, in reality Humana's submission is a thinly veiled attempt to obtain improper and accelerated review of previous District Court decisions, including the denial of a motion to exclude Elliot's expert,

and an advisory opinion from this Court regarding Humana's motion for summary judgment—which is fully briefed and currently pending before the District Court.

Plaintiff-Respondent David Elliot ("Elliot") opposes Humana's petition seeking interlocutory appeal of the District Court's Memorandum Opinion and Order certifying a class in this Telephone Consumer Protection Act ("TCPA") case. Order Granting Class Cert., R. 205 ("Order"). The District Court applied the correct legal framework and carefully considered each of the Rule 23 elements in its 28-page Order. The District Court certified the following class:

> All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana or person who consented to receive calls on behalf of an account holder (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

R. 205, Page ID #6521.

This case has been pending for more than three years, and the District Court methodically considered and decided various motions before the class certification stage. Shortly before certifying the class, the District Court thoroughly evaluated both Elliot's and Humana's motions to exclude the other's expert, and the District Court denied both motions in well-reasoned opinions. *See* Order Denying Humana's Motion to Exclude, R. 181, Page ID #5478; Order Denying Elliot's Motion to Exclude, R. 182, Page ID #5491. The District Court also permitted Humana to file excess pages in its original response, as well as a sur-reply in opposing class certification. R. 205, Page ID #6494; Sur-reply, R. 206. Thus, in analyzing the Rule 23 factors, both parties had the benefit of the District Court's fulsome review of all evidence and arguments.

After careful consideration of the evidence and competing arguments, the District Court properly exercised its discretion by finding that the case was appropriate for class treatment under Rule 23(b)(3) after a rigorous analysis of all factors. While Humana disagrees with this result, it fails to justify the exceptional remedy of immediate review of that decision under Rule 23(f). The District Court applied the correct legal framework and issued a well-reasoned Order. And that Order does not end this case nor is it final—the District Court has repeatedly clarified that Humana will have additional opportunities for review of the certified class, possible decertification, and may challenge its potential liability at trial. *See, e.g.*, R. 181, Page ID #5464; R. 182, Page ID #5488; R. 205, Page ID #6516. Humana has also moved for summary judgment arguing that the TCPA's "emergency exception" shields it entirely from liability in this case. Mot. Summ. J., R. 113, Page ID #1275-80. That argument has yet to be considered by the District Court.

This case arises from Humana's continued and incessant initiation of prerecorded calls to individuals who were non-Humana customers, even after the recipient of the calls told Humana it had reached the wrong person, often multiple times. For example, Class Representative David Elliot received at least 22 prerecorded calls from Humana on his cellular phone. Humana Call Log, R. 129-1, Page ID #2337. Elliot repeatedly told Humana to stop calling him and that it had reached the wrong person, but the calls continued. Summ. J. Opp., R. 129, Page ID #2321. Humana did not verify Elliot's phone number before calling it. *Id.* And that practice resulted in Humana robocalling tens of thousands of people who never consented. Elliot identified over 23,000 such potential claimants for just part of the class period. Mot. for Class Cert., R. 114-1, Page ID #1710; *see also* R. 205, Page ID #6495. As noted by the District Court, Humana's own objective database and records "provide a narrow and well-defined starting point of likely class members that the parties can use to send claim forms and affidavits" to the more than 23,000

individuals Humana called more than 145,000 times using prerecorded calls or messages after being told it had reached the wrong person. All of these individuals are believed not to be Humana customers. R. 205, Page ID #6549, 6501.

The District Court in this case carefully applied the correct legal framework. Humana's petition for interlocutory review of the Order should be denied.

## IV. SUMMARY OF THE ARGUMENT

The arguments in Humana's petition for interlocutory appeal center on three critical misstatements:

1) That the "only remaining step before trial is class notice." Pet. at 24. This is patently false. Humana has a summary judgment motion pending and ripe for disposition before the lower court. *See* R. 113. In fact, the District Court indicated "that summary judgment will be coming out shortly, very shortly." Pretrial Tr., R. 208, Page ID #6544. If granted, Humana will skirt liability entirely. Humana's petition does not mention this because it disposes of two of the four threshold considerations ("death-knell" and procedural posture) for this Court.
2) That Elliot has asserted a "wrong number" claim. *See* Pet. at 1, 6, 10, 12-13, 15, 16-17, 23. Elliot and the class assert a prerecorded call claim for violations of 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a) arising from Humana's use of a prerecorded voice to contact them. Neither the TCPA, the certified class definition, nor Elliot's complaint uses the phrase "wrong number." Only Humana does. And, incredibly, Humana insists that it makes prerecorded calls only "after receiving consent." Pet at 4. In truth, the class claim here arises from Humana's incessant robocalls to non-customers after they told Humana it had reached the wrong person.

3) That the certified class comprises only those persons who did not consent to receive robocalls from Humana. *See, e.g.*, Pet. at 9. Humana takes a single excerpt from the definition and presents it to this Court as the entire class. In truth, the vast majority of the class is defined exclusively as non-customers of Humana. That is probably why Humana's petition never mentions the full class definition: doing so destroys the remaining two of the four threshold considerations (novel question and likelihood of success on the merits) on this petition.

Humana seeks to camouflage its misrepresentations as the District Court's "misunderstand[ing of] how class actions work." Pet. at 18. That is because correcting Humana's misstatements dooms its petition to failure.

And none of the four traditional factors ("death-knell," procedural posture, novel question, and likelihood of success on the merits) nor any additional consideration (including scope of the prospective appeal) favor accepting Humana's interlocutory petition here. First, Humana has made literally no showing that there is a "death-knell" circumstance here. Second, notwithstanding the misdirection in Humana's petition, the District Court expressly noted that multiple opportunities for review—including Humana's pending dispositive motion—still remain in the court below. Third, Humana's novel question argument is grounded on a false premise: that the certified class is fail-safe, an assertion quickly dispelled by looking at the *actual* class definition rather than Humana's selective trimming of the definition. The final factor, likelihood of success on the merits, collapses under weight of the true facts here.

"A district court's class-certification decision calls for an exercise of judgment; its use of the proper legal framework does not. So long as the district court applies the correct legal framework, we review its decision for an abuse of discretion." *In re SamMichaels, Inc.*, No. 12-0110, 2013 WL 1760353, at *1 (6th

Cir. Apr. 25, 2013) (quoting *Pilgrim v. Universal Heath Card, LLC*, 660 F.3d 943, 946 (6th Cir.2011)). "This deferential standard of review supports the notion that Rule 23(f) appeals will be the exception, not the norm." *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002).

Tellingly, Humana's petition makes no mention of the standard of review until its very last section. That is because the District Court plainly applied the correct legal framework (Rule 23), and these circumstances do not begin to approach the abuse of discretion standard.

## V. ARGUMENT

### A. The procedural posture of this case shows that there is no "death-knell."

#### i. Humana does not even acknowledge—let alone attempt to show—the "death-knell" requisites.

A "death-knell" exists when "the costs of continuing the litigation for either a plaintiff or defendant may present such a barrier that later review is hampered." *In re SamMichaels, Inc.*, 2013 WL 1760353, at *1 (quoting *In re Delta Air Lines*, 310 F.3d at 960). To carry its burden, Humana is required to provide this Court with "insight into potential expenses and liabilities," *In re Delta Air Lines*, 310 F.3d at 960, and to prove "hardship." *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 353 (6th Cir. 2010).

Humana does not even attempt to meet its burden here. It does not argue any hardship or litigation costs that would prevent later review of the certification Order. It does not show any "undue pressure" to settle this lawsuit. Humana does not, and could not, argue that costs present any obstacle to its continuing this litigation, or that future costs would present a barrier such that later review is hampered. Nor does Humana provide this Court with potential expenses or liabilities, or offer any proof

of hardship. Humana's vague claims that it will face enormous damages after its liability is proven at trial is wholly insufficient—party must offer more than a 'general assertion' of harm" to demonstrate undue pressure and establish a "death-knell" scenario. *In re Lake City Indus. Prods., Inc.*, No. 12-0108, 2013 WL 414652, *1 (6th Cir. Jan. 9, 2013); *see* Pet. at 12.

Thus, Humana has chosen not to make any showing at all. Indeed, Humana does not even acknowledge this Court's standard. Instead, it relies exclusively on out-of-circuit caselaw in an attempted end-run around this Court's crystal-clear standard. *See* Pet. at 11-12.

This is perhaps because Humana has aggressively defended against—and wastefully prolonged—this case for more than three years, including filing dozens of motions and seeking reconsideration of various orders. As the District Court observed, "Humana has repeatedly filed motions that delay class certification and to push back pretrial deadlines." *See* R. 205, Page ID #6497 ("Humana did not move for leave to file a sur-reply until five weeks after the motion for class certification [DE 114] was fully briefed. A five-week delay in making the motion is considerable."). Humana gives every indication of its intent to continue its strategy of delay (including its filing of this petition). This is the polar opposite of a "death-knell" scenario.

#### ii. The procedural posture of the case strongly weighs against interlocutory review because multiple opportunities for review by the District Court still remain.

The procedural posture of this case further shows that there is no "death-knell" here. Humana will have several additional chances to dispute liability and class certification. It has a fully briefed summary judgment motion ripe for review (that would potentially provide a complete defense to liability) that the District Court has yet to rule upon. As the notice process proceeds, there is also the possibility for

review of the certified class, the definition, and potential for decertification. Humana will also have the opportunity to dispute liability and raise defenses at trial should the case get to that stage. And then, if liability is found, it would have the opportunity to file an appeal to this Court after that final judgment.

The District Court has also expressly described additional occasions for the certified class to be reconsidered, reexamined—or even decertified—as notice, dispositive motions, and trial proceed, as well as Humana's multiple remaining opportunities to contest its liability. For example, in its opinion denying Humana's motion to exclude Elliot's expert, the District Court observed: "Humana will have a full opportunity to cross-examine [Elliot's expert] at trial where the possibility of decertification may arise if cross-examination provides a basis for it." R. 181, Page ID #5464 (citing *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309- JD, 2022 WL 867256, at *4 (N.D. Cal. Mar. 23, 2022)). In the order certifying the class, the District Court stated: "If individualized inquiries into consent 'threaten to swamp common questions,' once the certification process begins, or other grounds for decertification arise, the Court can always address the issue at that time. Given the class definition and available tools for class notice and determination, common questions predominate." R. 205, Page ID #6516 (quoting *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1038 (D. Nev. 2018)).

Contrary to Humana's assertions otherwise, the District Court has openly explained that the certification decision is not the end of this case, and that there are still many avenues available below relating to the certification decision and whether it will stand. *See* Pet. at 24. Thus, the certification decision is not "impervious to revision" or "likely dispositive of the litigation." *In re Delta Air Lines*, 310 F.3d at 957 (citing *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999); FED. R. CIV. P. 23(f) Advisory Committee Notes (1998)).

As in the vast majority of TCPA class actions, there is no reason why Humana cannot appeal class certification after a final decision on the merits. Humana fails to establish any "death-knell" for this litigation, and the procedural posture favors denial of the petition for interlocutory appeal.

### B. Humana's "novel question" argument hinges on an obviously-false premise and thus Humana has no likelihood of success on the merits.

Humana attempts to conjure a novel issue by imagining "a split of authority within the Sixth Circuit" arising from "consent-based class definitions under the TCPA." Pet. at 23. Specifically, Humana maintains that, in modifying one discrete component of the class definition, the District Court "create[ed] an impermissible 'fail-safe' class." Pet. at 10.

This Court has explained that a fail-safe class is one "that includes *only* those who are *entitled* to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (emphasis in original). In other words, a class is fail-safe if it "cannot be defined until after the case is resolved on its merits." *Hodgin v. Parker Waichman LLP*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *4 (W.D. Ky. Sept. 30, 2015) (citing *Young*, 693 F.3d at 538). Generally, fail-safe classes "allow putative class members to seek a remedy but not be bound by an adverse judgment." *Id.*

Here, Humana grounds its fail-safe argument on a critical misrepresentation of the class definition: that it "include[s] only those who did not 'consent' to receive prerecorded calls." Pet. at 10. In truth, the District Court certified a class comprising:

> All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana or person who consented to receive calls on behalf of an account holder (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

R. 205, Page ID #6521.

Tellingly, Humana's argument ignores the fact that, as defined, the overwhelming majority of class members are "[not] current account holder[s] of Humana" because acknowledging the full class definition would torpedo its hopes of succeeding on this petition. *See, e.g.*, Pet. at 9, 22-23. That is because, on its face, the class does not "include only those who are entitled to relief," Pet. at 23, and the class definition does not merely "reference the merits of the case to determine class membership," *id.* at 22 (citing 1 Newberg and Rubenstein on Class Actions § 3:6 (6th ed. Nov. 2024 update)). *See also Nichols v. Accretive Cap. LLC*, No. 23-10473, 2023 WL 7222677, at *5 (E.D. Mich. Nov. 2, 2023) (finding TCPA class was not fail-safe and did not hinge on consent alone); *Hodgin*, 2015 WL 13022289, at *4 (holding in TCPA case that "there [we]re numerous ways a [potential class member] would not be entitled to relief," and as such, the class was not fail-safe).

Similarly, Humana's pending summary judgment argument—that the "emergency purpose exception" shields it from all liability for the calls at issue in this case—also eliminates any fail-safe concerns. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, No. 3:17-cv-186-CHB, 2025 WL 964446, at *14 (W.D. Ky. Mar. 31, 2025) ("[In] a properly defined class, … the class members have a legal claim, but 'might not be entitled to relief due to [certain] affirmative defenses.'") (quoting *Jewell v. Magnolia Bank, Inc.*, No. 3:23-cv-78-RGJ, 2024 WL 203972, at *7 (W.D. Ky. Jan. 17, 2024)). In other words, should the District Court, even after certifying the class, find on summary judgment that the emergency purposes exception applies to the calls at issue here—as Humana contends—the claims of each member of the class will fail, but the class members will remain in the class and be bound by that decision. *See* R. 113, Page ID #1263. So Humana's petition simply ignores its pending dispositive motion.

This Court should not countenance Humana's deception. Whether evaluated on the objective criteria underpinning the actual class definition (rather than Humana's creative re-casting of it), or if viewed through the lens of the numerous defenses on which Humana has moved for summary judgment, the ultimate outcome is unavoidable: by its unambiguous terms, the class definition does not include "*only* those who are *entitled* to relief." *Young*, 693 F.3d at 538 (emphasis in original); *see, e.g.*, *Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 806 (W.D. Tenn. 2022) (finding no fail-safe class where it "consist[ed] of persons or entities that [defendant] called that were not [defendant's] customers" and did not include "only those entitled to relief"). The class is not fail-safe. Class membership does not center around the issue of consent. The certified class will be bound by the liability adjudication—win or lose—at all procedural stages.[1]

Nor did the District Court err in tightening the class definition. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (explaining that district courts "have broad discretion to modify class definitions"). And nothing prevents the District Court from modifying the class definition further as the case proceeds. *See* Wright and Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.) (noting that the district court's alteration or modification of certification order is appropriate at various stages of litigation); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 463 (N.D. Ohio 2014) (quoting *Powers*,

---

[1] By contrast, the District Court's exclusion of individuals "who consented to receive calls on behalf of an account holder" means those persons will neither benefit from a favorable ruling on liability nor be bound by an adverse ruling on liability. Such exclusions do not make a class fail-safe. *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *9 (D.N.M. June 5, 2018) (modifying the class definition to include: "Excluded are customers of First National Bank Texas or First Community Bancshares, Inc.," and concluding that the modification did "not create an improper 'fail-safe' class").

501 F.3d at 619) (noting "[d]istrict courts have broad discretion to modify class definitions," and "the 'district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed'"). The District Court rigorously applied the correct legal framework and did not abuse its discretion in certifying the class or modifying the definition; interlocutory review is thus not warranted. Even a cursory glance at the District Court's class certification decision shows meticulous analysis and application of all Rule 23 factors.

Thus, with no viable argument on the fail-safe issue and no plausible contention that the District Court disregarded the framework of Rule 23, Humana has no novel question worthy of interlocutory appeal and no likelihood of success before this Court. As a result, Humana floats a hodgepodge of issues in the apparent hope of gaining some other appellate foothold.

One such theory is that individualized questions, particularly the reliability of "wrong number" notations in Humana's own call records, prevent certification of the class. *See* Pet. at 16. To wit, Humana argues that the "wrong number" designation Humana itself applies and uses for its records does not actually mean "wrong number," but instead is a "kind of shorthand" that "mean[s] different things for different members." *Id.*; *see also* R. 205, Page ID #6512 ("Humana's CGX database marked the calls at issue as 'wrong number' and there is no formal process or documentation Humana provides to show multiple common or intended meanings for wrong number designations."). Humana's argument is unavailing.

Simply put, Humana contends that the records it relies on every day to operate a Fortune 100 company magically become entirely unreliable when plaintiffs seek to use them in class action litigation. But this familiar argument has been routinely rejected by this Court and federal courts across the country, just as it was properly rejected by the District Court below. *See* R. 205, Page ID #6512-13 (rejecting

Humana's attempt to "rel[y] on poor or inconsistent record keeping as an argument against certification, asking the Court to ignore the plain meaning of 'wrong number,'" and citing *Young*, 693 F.3d at 540)); *see also, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015) ("If the Court were to deny certification because Dish does not keep an accurate list … it would create the perverse incentive for entities to keep poor records."), *aff'd*, 925 F.3d 643 (4th Cir. 2019); *Gibbs v. Stinson*, No. 3:18CV676, 2021 WL 4812451, at *12 (E.D. Va. Oct. 14, 2021) ("Courts do not look favorably upon the argument that records a defendant treats as accurate for business purposes are not accurate enough to define a class.") (cleaned up), *appeal dismissed*, No. 22-1017, 2022 WL 18228580 (4th Cir. Sept. 6, 2022). Humana cannot manufacture an issue worthy of interlocutory review by claiming that its own business records are unreliable. And this issue was analyzed thoroughly, and rightfully rejected, by the District Court. R. 205, Page ID #6515, 6520.

Humana also maintains that the District Court intends to utilize affidavits alone to "establish Humana's *liability* as to each class member *before trial*." Pet. at 20 (emphasis in original). But the District Court's decision flatly contradicts Humana's mischaracterization: the Order states that affidavits will be only one element of the process; they will be used in conjunction with other tools "as a mechanism for establishing class membership." R. 205, Page ID #6513 ("Under this framework, class membership determinations would be premised not only on claimants' claim forms and affidavits, but on Humana's own data and wrong number reports, a common and administratively feasible framework for class notice.") (citing *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023–25 (E.D. Mich. 2020), *aff'd*, 992 F.3d 412 (6th Cir. 2021)); *see also id.*, Page ID #6515 ("[S]worn attestations are common in certifying class actions"). And class membership does not establish liability. As the District Court's Order and docket make clear,

Humana's liability will ultimately be determined through Humana's pending motion for summary judgment, at trial, or both. Humana presents no novel question, nor does it demonstrate any likelihood of success on the merits in these circumstances.

### C. Additional considerations, including the exceedingly broad scope of the prospective appeal, also weigh against interlocutory review.

Beyond the factors addressed *supra*, this Court typically considers the holistic scope of the prospective appeal in considering a petition for interlocutory review. *See In re Delta Air Lines*, 310 F.3d at 962 ("The issues on which the defendants seek appeal cannot easily be isolated in the context of an appeal limited to class certification issues."). Here, Humana makes plain its hopes to re-litigate major elements of the proceedings below in the context of an interlocutory appeal, and to usurp the provinces of the District Court and the jury. *See, e.g.*, Pet. at 2, 9, 17-18 (criticizing methodology of Appellee's expert, whom the District Court declined to exclude) & 5, 7 (advocating for application of emergency purpose exception, currently pending on summary judgment). Thus, Humana's petition portends an appeal encompassing issues far outside of the District Court's class certification decision and beyond the scope of an appropriate request for permissive appeal. This Court should deny the petition.

## VI. CONCLUSION

There are no exceptional circumstances here. On the contrary, the District Court exercised routine discretion to modify and certify a class of persons who received unsolicited robocalls from Humana. Perhaps not surprisingly, Humana wants a do-over before this Court, not just on the certification decision but on numerous motions adjudicated by the District Court. Indeed, Humana's petition telegraphs a sweeping and uncircumscribed universe of arguments if interlocutory review is granted, including re-litigation of the denial of Humana's motion to

exclude Elliot's expert, and an advisory opinion from this Court on the merits of Humana's pending motion for summary judgment. But Humana still has multiple bites at these apples before the District Court and the jury.

And Humana has not shown any of the requisites for interlocutory review: that the District Court abused its discretion in certifying a class; that there is a novel question arising from that quotidian exercise of discretion; that this Court should short-circuit procedural norms because Humana may get an adverse ruling on its pending motion for summary judgment; that the financial burdens of litigation on Humana even begin to approach this Court's "death-knell" standard; or that Humana has demonstrated a likelihood of success on the merits here.

For all of these reasons, this Court should deny Humana's petition for interlocutory review.

DATED: May 5, 2025

Respectfully submitted,

*/s/ James S. Wertheim*

James S. Wertheim
Micael Hartmere
Brittany Clark
The HQ Firm, P.C.
7533 S. Center View Ct. #4424
West Jordan, UT 84084
(385) 440-4121
Jim@thehqfirm.com
Michael.Hartmere@thehqfirm.com
Brittany.Clark@thehqfirm.com

*Counsel for Respondent*

## CERTIFICATE OF COMPLIANCE

I, James S. Wertheim, certify that this brief complies with the requirements of FED. R. APP. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B), because it contains 4,523 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

*/s/ James S. Wertheim*
James S. Wertheim

## CERTIFICATE OF SERVICE

I, James S. Wertheim, hereby certify that on May 5, 2025, the foregoing document was served on all Parties and their counsel of record via the CM/ECF System.

*/s/ James S. Wertheim*
James S. Wertheim

## ADDENDUM

Pursuant to Sixth Circuit Rule 30(g)(1), Respondent David Elliot hereby designates the following relevant District Court documents:

### DISTRICT COURT DOCUMENTS

| Record Entry ("R.") | Description | PageID Number Range |
|---|---|---|
| 1 | Complaint | 1-13 |
| 113 | Humana's Motion for Summary Judgment | 1261-1283 |
| 114-1 | Elliot's Motion for Class Certification | 1696-1724 |
| 129 | Elliot's Response to Motion for Summary Judgment | 2318-2335 |
| 129-1 | Humana's Call Log, Exhibit A to Plaintiff's Response to MSJ | 2336-2337 |
| 181 | Memorandum Opinion & Order Denying Humana's Motion to Exclude | 5455-5478 |

| | | |
|---|---|---|
| 182 | Memorandum Opinion & Order Denying Elliot's Motion to Exclude | 5479-5491 |
| 205 | Memorandum Opinion & Order Granting Class Certification | 6494-6521 |
| 206 | Humana's Sur-Reply to Motion for Class Certification | 6522-6539 |
| 208 | Pretrial Transcript | 6542-6557 |